## CHAMBERS & Others *v.* HARRINGTON & Another.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF UTAH.

Argued April 1st and 2d, 1884.—Decided April 14th, 1884.

*Jurisdiction—Mineral Lands.*

The decision of a court of competent jurisdiction upon adverse claims to a patent for mineral lands under §§ 2325, 2326 Rev. Stat. is subject to review in this court when the amount in controversy is sufficient.

When several adjoining claims to mineral lands are held in common, work for the benefit of all done upon any one of them in a given year to an amount equal to that required to be done upon all in that year meets the require-ments of § 2324 Rev. Stat. The language of the court in *Jackson* v. *Roby*, 109 U. S. 440, cited and approved.

The defendants in error as plaintiffs brought suit in the District Court for the Third Judicial District of the Territory of Utah, under § 2326 Rev. Stat., to have adverse claims to patents for mineral lands determined. Judgment for plain-tiffs there, which was affirmed by the Supreme Court of the Territory on appeal. The defendants appealed to this court from the judgment of the Supreme Court. The facts making the case are stated in the opinion of the court.

*Mr. Shellabarger* for appellants.

*Mr. John R. McBride* for appellees.

MR. JUSTICE MILLER delivered the opinion of the court.

This is an appeal from the Supreme Court of the Territory of Utah.

The case has its origin in a proceeding under §§ 2325 and 2326 of the Revised Statutes, to obtain a patent for mineral lands of the United States.

The first of these sections requires that, after a discovery of a mine or lode, and the steps required to mark out and assert a claim to it, if the discoverer desires a patent, he shall give notice of that fact, by a publication for sixty days, the nature of which is such as to call the attention to the proceeding of any one having an adverse claim. § 2326 requires of any person desiring to contest the claimant's right, to file his adverse claim in the land office, with the particulars of it, under oath. It then declares:

"It shall be the duty of the adverse claimant, within thirty days after filing his claim, to commence proceeding in a court of competent jurisdiction, to determine the question of the right of possession, and prosecute the same with reasonable diligence to final judgment, and a failure to do so shall be a waiver of his adverse claim."

It is then provided that, on filing a copy of the judgment-roll in the case, with the register of the land office, and making the other requisite showing, a patent shall issue to the successful party in the litigation.

It is now urged that such a judgment is not subject to review in this court, and the appeal should be dismissed.

But it is apparent that the statute requires a judicial proceeding, in a competent court. What is a competent court is not specifically stated, but it undoubtedly means a court of general jurisdiction, whether it be a State court or a Federal court; and as the very essence of the trial is to determine rights by a regular procedure in such court, after the usual methods, which rights are dependent on the laws of the United States, we see no reason why, if the amount in controversy is sufficient in a case tried in a court of the United States, or the proper case is made on a writ of error to a State court, the judgment may not be brought to this court for review, as in other similar cases. *Belk* v. *Meagher*, 104 U. S. 279.

The only question on the merits of the case requiring much attention arises out of the requirement of § 2324 of the Revised Statutes, that some work should be done on every claim, in

every year, from the date of the discovery until the issue of the patent. The language of the statute on the subject is this :

" On each claim located after the tenth day of May, 1872, and until a patent has been issued therefor, not less than one hundred dollars' worth of labor shall be performed or improvements made during each year. On all claims located prior to the tenth of May, 1872, ten dollars' worth of labor shall be performed or improvements made by the 10th day of June, 1874, and each year thereafter for each one hundred feet in length along the vein until a patent has been issued therefor ; but when such claims are held in common such expenditures may be made upon any one claim."

It then provides for proceedings in favor of co-owners who do their work or pay for it, against those who do not, to forfeit their interest in the claim.

This latter clause clearly shows that one meaning of the phrase " held in common " is where there are more owners of the claim than one, while the use of the word *claims* held in common, on which work done on one of such claims shall be sufficient, shows that there must be more than one claim so held, in order to make the case where work on one of them shall answer the statute as to all of them.

It is not difficult, in looking at the policy of the government in regard to its mineral lands, to understand the purpose of this provision. For many years after the discovery of the rich deposits of gold and silver in the public lands of the United States, millions of dollars' worth of these metals were taken out by industrious miners without any notice or attention on the part of the government. The earliest legislation by Congress simply recognized the obligatory force of the local rules of each mining locality in regard to obtaining, transferring, and identifying the possession of these parties.

Later, provision was made for acquiring title to the land where these deposits were found, and prescribing rules for the location and indentification of claims, and securing their possession against trespass by others than their discoverers.

But in all this legislation to the present time, though by appropriate proceedings and the payment of a very small sum,

a legal title in the form of a patent may be obtained for such mines, the possession under a claim established according to law is fully recognized by the acts of Congress, and the patent adds little to the security of the party in continuous possession of a mine he has discovered or bought.

These mineral lands being thus open to the occupation of all discoverers, one of the first necessities of a mining neighborhood was to make rules by which this right of occupation should be governed as among themselves; and it was soon discovered that the same person would mark out many claims of discovery and then leave them for an indefinite length of time without further development, and without actual possession, and seek in this manner to exclude others from availing themselves of the abandoned mine. To remedy this evil a mining regulation was adopted that some work should be done on each claim in every year, or it would be treated as abandoned.

In the statute we are considering, Congress, when it came to regulate these matters and provide for granting a title to claimants, adopted the prevalent rule as to claims asserted prior to the statute, and as to those made afterwards it required one hundred dollars' worth of labor or improvement to be made in each year on every claim. Clearly the purpose was the same as in the matter of similar regulations by the miners, namely, to require every person who asserted an exclusive right to his discovery or claim to expend something of labor or value on it as evidence of his good faith, and to show that he was not acting on the principle of the dog in the manger.

When several claims are held in common, it is in the line of this policy to allow the necessary work to keep them all alive, to be done on one of them. But obviously on this one the expenditure of money or labor must equal in value that which would be required on all the claims if they were separate or independent. It is equally clear that in such case the claims must be contiguous, so that each claim thus associated may in some way be benefited by the work done on one of them.

The principle is well stated by Judge Sawyer in the case of *Mount Diabolo M. & M. Company* v. *Callison*, 5 Sawyer, 439.

"Work done," he says, " outside of the claim, or outside of

any claim, if done for the purpose and as a means of prospecting or developing the claim, as in cases of tunnels, drifts, &c., is as available for holding the claim, as if done within the boundaries of the claim itself. One general system may be formed well adapted and intended to work several contiguous claims or lodes, and where such is the case work in furtherance of the system is work on the claims intended to be developed." In the case of *Jackson* v. *Roby*, decided at the present term, 109 U. S. 440, similar language is used. "It often happens that for the development of a mine upon which several claims have been located, expenditures are required exceeding the value of a single claim, and yet without such expenditures the claim could not be successfully worked. In such cases it has always been the practice for the owners of the different locations to combine and work them as one general claim; and expenditures which may be necessary for the development of all the claims may then be made on one of them. . . . In other words, the law permits a general system to be adopted for adjoining claims held in common, and in such case, the expenditures required may be made or the labor be performed, upon any one of them." That was a case of placer mining in which the tailings from one claim were carried by a flume and deposited on another which was contiguous, and it was held this latter claim was not aided, but its development rather injured, by this work. This claim was not, therefore, kept valid by such work, and some remarks were made in the opinion which would not, perhaps, be strictly applicable to discoveries and works done in developing lodes or veins.

In the case before us the appellees became successively owners of three claims contiguous to each other, supposed to be located on the same lode. These were, first, the Parley's Park claim; second, the Central; and third, the Lady of the Lake. They continued their work on the Parley's Park claim from 1872 until July 19th, 1878, when they transferred it to the Lady of the Lake claim, and did no more work on the other until September 13th, 1879, when one Cassidy, claiming that the Parley's Park claim was forfeited for want of work on it for more than a year, located a mining claim called the Acci-

dental, which embraces the premises in dispute, and which is part of the Parley's Park claim.

This claim of Cassidy—the Accidental—is the one on which appellants, who became its owners, now rely, and if the work done on the Lady of the Lake is not work done in common on the three claims of appellees, within the meaning of the statute, the claim of the appellant must prevail.

The finding of facts by the court below on that point is as follows:

" 5th. That during the year beginning on the 19th of July, 1878, the owners of the Parley's Park claim were also the owners of two certain claims, called respectively the ' Central ' and ' Lady of the Lake '—the Central adjoining the Parley's Park and Lady of the Lake adjoining the Central mining claim—and that, with a view to the future working and development of all three of said claims, the owners thereof located what is called the ' Main Shaft ' in the Lady of the Lake surface ground. That said shaft is in such proximity to said Parley's Park mining claim that work in it has a tendency to develop said claim, and said shaft was located and intended for the purpose of developing all of said claims.

" I find that during said last named year work was prosecuted in said shaft, and by improvements made thereat exceeding in value $300, and of not less than two thousand dollars in value. No work was done in said year after July 19th, 1878, and prior to the 15th day of September, 1879, in Parley's Park surface ground, or within its limits, by the owners thereof."

We are of opinion that this brings the case clearly within the principles we have laid down, and the work was effectual to protect the Parley's Park claim against an intruder.

By the act of February 11th, 1875, 18 Stat. 315, § 2324 was so amended that work on a tunnel in a mine should be held to dispense with work on the surface and taken and considered as work expended on the lode, whether located prior to or since the passage of that act.

We are not able to see that this affects the character of other work to be done or improvements to be made according to the law as it stood before, except as it gives a special value to making a tunnel.

The questions raised on the admission of evidence to prove the existence and discovery of a lode by defendants, were, we think, well decided and need no further comment.

*The decree of the Supreme Court of Utah is affirmed.*