# BLACKBURN v. PORTLAND GOLD MINING COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF COLORADO.

No. 54. Argued and submitted October 18, 1899. — Decided January 8, 1900.

The provision in Rev. Stat. § 2326 for the trial of adverse claims to a mining patent " by a court of competent jurisdiction," does not relate to any particular court, state or Federal; but it was the intention of Congress in this legislation to leave open to suitors all courts competent to determine the question of the right of possession.

A controversy between rival claimants under that and the previous section can be properly determined by a state court, if the usual conditions of Federal jurisdiction do not exist, and the judgment of the Supreme Court of a State in such case cannot be reviewed by this court, simply because the parties were claiming rights under a Federal statute.

The court does not undertake to say that no case can arise under this legislation, which turns upon a disputed construction, and therefore presents a question essentially Federal in its nature.

THIS was an action brought on August 27, 1897, in the Circuit Court of the United States for the District of Colorado, by William H. Blackburn, a citizen of the State of Colorado against the Portland Gold Mining Company, a corporation of the State of Iowa, and W. S. Stratton, a citizen of the State of Colorado.

It was alleged in the complaint that the amount in dispute in the cause exceeded, exclusive of interest and costs, the sum of two thousand dollars; that the suit was of a civil nature at common law, and arose under the laws of the United States; that it was an adverse suit, and a suit arising under the provisions of sections 2325 and 2326, Revised Statutes of the United States, and is what is known as a suit in support of an adverse claim; that the defendant, W. S. Stratton, had applied for a patent for a portion of the Fairplay Lode mining claim, survey lot No. 9331, under and by virtue of the provisions of section 2325, and that the plaintiff Blackburn, under and by virtue of section 2326, had filed his adverse claim and protest

against the entry of said portion of said Fairplay claim, upon the ground that a part thereof was held and owned by the plaintiff as a part and parcel of the Eacho Lode mining claim; that said W. S. Stratton, on or about the 4th day of February, 1897, had made application in the United States land office at Pueblo, Colorado, for a patent on said portion of said Fairplay Lode mining claim under said section 2325, and that at the time he made his said application he was not the real owner of said portion of Fairplay Lode mining claim, neither did he have any interest or title whatsoever therein; that long prior to said time the said Stratton had by good and sufficient deed conveyed all his right, title and interest in and to said claim to the Portland Gold Mining Company, defendant, and for that reason the plaintiff brought this action against the said the Portland Gold Mining Company jointly with said Stratton; that on February 1, 1897, and ever since, the plaintiff was and is the owner of and in actual possession of the Eacho Lode mining claim, 1500 by 300 feet, situate in the Cripple Creek mining district, El Paso County, State of Colorado, and that plaintiff has the legal right to occupy and possess the same by virtue of a full compliance with the local rules and regulations of miners in said mining district and of the laws of the United States and of the State of Colorado, and by preëmption, discovery and location thereof as a lode mining claim located on the public domain of the United States; that on February 4, 1897, the defendant wrongfully and unlawfully entered into and upon a parcel of the said Eacho Lode mining claim described as follows, to wit: All that part of said claim which is intersected by the exterior lines of survey No. 9331, known as the Fairplay Lode mining claim, as shown by plat marked B, filed on July 28, 1899, in the land office of the United States at Pueblo, Colorado, with the adverse claim of plaintiff against the entry of said survey lot for patent; that the defendant has ever since wrongfully withheld possession of said parcel of Eacho Lode mining claim from the plaintiff, to his damage in the sum of one thousand dollars; that this suit is brought in support of said adverse claim within thirty days after the filing of said adverse claim, and that plaintiff

has necessarily disbursed and expended the sum of one thousand dollars for plats, abstracts and copies of papers filed in said land office with said adverse claim, and also a reasonable counsel fee, to wit, two hundred dollars for the expense of preparing his said adverse claim.

The plaintiff prayed for a judgment that he is the owner and entitled to the possession of and patent to the above-described parcel of said Eacho Lode mining claim, and for the recovery of the same; for the sum of one thousand dollars damages; for the sum of three hundred dollars expended in behalf of said adverse claim, and for costs of suit.

On November 8, 1897, the defendants, The Portland Gold Mining Company and W. S. Stratton, moved the court to dismiss the cause for the following alleged reasons:

1st. That the court has no jurisdiction either of the parties or the subject-matter of said suit:

2d. That both the plaintiff and defendants in said suit are citizens of the State of Colorado, and the same is not one wholly between citizens of different States:

3d. That it does not appear in said complaint that the amount in controversy in said suit is two thousand dollars:

4th. That it appears from said complaint that said suit is one which cannot under the Constitution and statutes of the United States be brought into this court.

On December 20, 1897, the court entered judgment dismissing the cause for want of jurisdiction, and signed a bill of exceptions at the request of the plaintiff, and also certified that the said question of jurisdiction of the Circuit Court of the United States was the only one involved in the said cause, and was the sole question upon which said cause was dismissed, and also allowed the present writ of error.


*Mr. Charles J. Hughes, Jr.*, for plaintiff in error submitted on his brief.


*Mr. W. H. Bryant* for defendants in error. *Mr. C. S. Thomas* and *Mr. H. H. Lee* were on his brief.

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

As the court below filed no opinion, we are not distinctly informed upon which of the several grounds alleged the court proceeded in dismissing the cause for want of jurisdiction, and therefore it will be necessary for this court to consider each and all of them.

First, then, does the record disclose that the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars? The allegation in the complaint is "that the amount in dispute in this cause exceeds, exclusive of interest and costs, the sum of two thousand dollars;" and it is also made to appear that the matter in dispute is the title to a mining claim, for which, and for damages and expenses amounting to thirteen hundred dollars, the plaintiff demands judgment. The defendants did not think fit to traverse these allegations, but moved to dismiss on the face of the complaint. Upon such a motion, as upon a demurrer, a court will not incline to dismiss for want of jurisdiction unless the facts appearing of record create a legal certainty of that conclusion. *Barry* v. *Edmunds,* 116 U. S. 550; *Wetmore* v. *Rymer,* 169 U. S. 115. We are not impressed by the criticism that the *amount,* instead of the *matter,* in dispute is alleged to have exceeded two thousand dollars. The meaning of such an allegation is clear, and in the absence of any traverse thereof, and of any pretence that, in point of fact, the matter in dispute did not exceed the sum or value of two thousand dollars, we think that the record fairly imports the necessary jurisdictional amount.

The next contention, that the Circuit Court could not take jurisdiction because the record did not disclose that the controversy was between citizens of different States, seems to us to have been well founded. The complaint alleged that Stratton, one of the defendants, was a citizen of the same State as the plaintiff. Not only was Stratton named as a party defendant in the complaint, but a summons was sued out against him as such; and the motion to dismiss the complaint was made

in behalf of Stratton as well as of the Portland Gold Mining Company.

It is, however, argued that, as it is alleged in the complaint that Stratton had conveyed by deed his interest in the mining claim to the Portland Gold Mining Company, Stratton was a nominal party only, whose presence on the record would not defeat the jurisdiction of the court as between the other parties; and cases are cited in which it has been held that the jurisdiction of the Federal courts will not be defeated by the mere joinder or non-joinder of formal parties. *Wormley* v. *Wormley*, 8 Wheat. 421; *Wood* v. *Davis*, 18 How. 467; *Walden* v. *Skinner*, 101 U. S. 577.

But considering the nature of the suit and the relief sought thereby, we are not prepared to hold that Stratton was a purely formal and unnecessary party. It is clear, from the provisions of sections 2325 and 2326, Revised Statutes, that they contemplate a controversy between an applicant for a patent and an adverse claimant. Under the first of these sections Stratton, as the complaint shows, made personal application in the United States land office at Pueblo for a patent.

In order, therefore, that a controversy could arise under these sections, Stratton must have complied with the provisions of section 2325 by having located a piece of land and by having filed in the land office an application under oath for a patent, showing compliance, together with a plat and field notes of the claim, made by or under the direction of the United States surveyor general, showing accurately the boundaries of the claim, which shall be distinctly marked by monuments on the ground, and by having posted a copy of such plat, together with a notice of such application for a patent, in a conspicuous place on the land embraced in such plat previous to the filing of the application for a patent, and by filing an affidavit of at least two persons that such notice has been duly posted, and by filing a copy of the notice in the land office.

It is quite evident, under these provisions and the allegations of the complaint, that, when Blackburn desired to file an adverse claim, he was informed by the proceedings in the

land office that Stratton was the applicant for the patent and was asserting his compliance with the statute, and was therefore a proper and necessary party to make defendant. Why he included the Portland Gold Mining Company as a party defendant is not quite evident, but it may be conjectured that he wished to raise some question as to the validity of Stratton's proceedings in the land office after he had, as alleged, parted with his interest in the claim. However this may be, we are of opinion that Blackburn could not proceed safely and formally to raise an issue by an adverse claim without making the person claiming the patent a party defendant when he instituted his proceedings in court.

Nevertheless, even if the Circuit Court could not take jurisdiction of the case because the controversy was not between citizens of different States, it is claimed that the court had jurisdiction because an adverse suit, or suit brought in support of a protest and adverse claim, under the provisions of sections 2325 and 2326 of the Revised Statutes, is a suit arising under the laws of the United States in such a sense as to confer jurisdiction on a Federal court, regardless of the citizenship of the parties.

This presents an important question, one that has been differently answered in the lower courts which have been called upon to decide it. *Burke* v. *The Bunker Hill Man. Co.*, 46 Fed. Rep. 644; *Trafton* v. *Nouges*, 4 Sawyer, 178; *Rutter* v. *Shoshone Mining Co.*, 75 Fed. Rep. 37; *Shoshone Mining Co.* v. *Rutter*, 59 U. S. App. 538.

It may be well to quote in full the language of the sections in question:

" SEC. 2325. A patent for any land claimed and located for valuable deposits may be obtained in the following manner: Any person, association or corporation authorized to locate a claim under this chapter, having claimed and located a piece of land for such purposes, who has, or have, complied with the terms of this chapter, may file in the proper land office an application for a patent, under oath, showing such compliance, together with a plat and field notes of the claim or claims in common, made by or under the direction of the United States

surveyor general, showing accurately the boundaries of the claim or claims, which shall be distinctly marked by monuments on the ground, and shall post a copy of such plat, together with a notice of such application for a patent, in a conspicuous place on the land embraced in such plat previous to the filing of the application for a patent, and shall file an affidavit of at least two persons that such notice has been duly posted, and shall file a copy of the notice in such land office, and shall thereupon be entitled to a patent for the land, in the manner following: The register of the land office, upon the filing of such application, plat, field notes, notices, and affidavits, shall publish a notice that such application has been made, for the period of sixty days, in a newspaper to be by him designated as published nearest to such claim; and he shall also post such notice in his office for the same period.  The claimant at the time of filing this application, or at any time thereafter, within the sixty days of publication, shall file with the register a certificate of the United States surveyor general that five hundred dollars' worth of labor has been expended, or improvements made upon the claim, by himself or grantors; that the plat is correct; with such further description by such reference to natural objects or permanent monuments as shall identify the claim, and furnish an accurate description, to be incorporated in the patent.  At the expiration of the sixty days of publication the claimant shall file his affidavit, showing that a plat and notice have been posted in a conspicuous place on the claim during such period of publication.  If no adverse claim shall have been filed with the register and the receiver of the proper land office at the expiration of the sixty days of publication, it shall be assumed that the applicant is entitled to a patent, upon the payment to the proper officer of five dollars per acre, and that no adverse claim exists; and thereafter no objection from third parties to the issuance of a patent shall be heard, except it be shown that the applicant has failed to comply with the terms of this chapter.

" Sec. 2326. Where an adverse claim is filed during the period of publication, it shall be upon oath of the person or persons making the same, and shall show the nature, boun-

daries and extent of such adverse claim, and all proceedings, except the publication of notice, and making and filing of the affidavit thereof, shall be stayed until the controversy shall have been settled or decided by a court of competent jurisdiction, or the adverse claim waived. It shall be the duty of the adverse claimant, within thirty days after filing his claim, to commence proceedings in a court of competent jurisdiction, to determine the question of the right of possession, and prosecute the same with reasonable diligence to final judgment; and a failure so to do shall be a waiver of his adverse claim. After such judgment shall have been rendered, the party entitled to the possession of the claim, or any portion thereof, may, without giving further notice, file a certified copy of the judgment roll with the register of the land office, together with the certificate of the surveyor general that the requisite amount of labor has been expended or improvements made thereon, and the description required in other cases, and shall pay to the receiver five dollars per acre for his claim, together with the proper fees, whereupon the whole proceedings and the judgment roll shall be certified by the register to the Commissioner of the General Land Office, and a patent shall issue thereon for the claim, or such portion thereof as the applicant shall appear, from the decision of the court, to rightly possess. If it appears from the decision of the court that several parties are entitled to separate and different portions of the claim, each party may pay for his portion of the claim, with the proper fees, and file the certificate and description by the surveyor general, whereupon the register shall certify the proceedings and judgment roll to the Commissioner of the General Land Office, as in the preceding case, and patent shall issue to the several parties according to their respective rights. Nothing herein contained shall be construed to prevent the alienation of the title conveyed by a patent for a mining claim to any person whatever."

The first observation to be made is that Congress did not intend to prescribe jurisdiction in any particular court, state or Federal. "It shall be the duty of the adverse claimant, within thirty days after filing his claim, to *commence proceed-*

*ings in a court of competent jurisdiction,* to determine the question of the right of possession, and prosecute the same with reasonable diligence to final judgment."

The natural inference from this language is that the competency of the adjudicating court was not to be determined by the mere fact that the mining claims in controversy consisted of lands the title to which was in the United States. If that fact alone were to be decisive no other than a Federal court would have been mentioned. We think the intention of Congress, in this legislation, was to leave open to suitors all courts competent to determine the question of the right of possession. If the parties to the controversy were citizens of different States, and if the matter in dispute exceeded the sum or value of two thousand dollars, then the claimant might elect to commence proceedings in a Federal or in a state court, because either would be competent to determine the question of the right of possession. But if the usual conditions of Federal jurisdiction did not exist, that is, if there was no adverse citizenship, and if the matter in dispute did not exceed two thousand dollars, then the party claimant could proceed in a state court.

This court has frequently been vainly asked to hold that controversies in respect to lands, one of the parties to which had derived his title directly under an act of Congress, for that reason alone presented a Federal question. Thus, in *Romie* v. *Casanova,* 91 U. S. 379, which was an action brought to recover the possession of certain lands in the city of San José, the question to be determined was, which of two parties had actually obtained a grant of the particular premises in question. The title of the city had originated before the cession of California to the United States. But this court said : " The title of the city was not questioned. Even if it depended upon the treaty of Guadalupe Hidalgo and the several acts of Congress to ascertain and settle private land claims in California, the case would not be different. Both parties admit that title, and their litigation extends only to the determination of the rights which they have severally acquired under it." Accordingly the writ of error to the Supreme Court of California was dismissed for want of jurisdiction.

Again, in *McStay* v. *Friedman*, 92 U. S. 723, where, in eject-ment for a part of the lands confirmed to the city of San Fran-cisco by an act of Congress, the validity and operative effect of which were not questioned, this court held that it had no jurisdiction to review the judgment of the Supreme Court of California, saying : " No Federal question was involved in the decision of the Supreme Court. The city title was not drawn in question. The real controversy was as to the transfer of that title to the plaintiffs in error ; and this did not depend upon the Constitution, or any treaty or statute of, or commis-sion held or authority exercised under, the United States."

*Gold Washing and Water Co.* v. *Keyes*, 96 U. S. 199, was a suit in equity in a state court of California, and brought on petition into the Circuit Court of the United States on the allegation that its determination involved the construction of certain laws of the United States affecting rights in public and mineral lands. The Circuit Court remanded the case to the state court on the ground that no real or substantial con-troversy, properly within the jurisdiction of a Federal court, appeared to be involved.. That judgment of the Circuit Court was affirmed by this court in an opinion of Mr. Chief Justice Waite, a portion of which was as follows :

" The attempt to transfer this cause was made under that part of section 2 of the act of 1875, which provides for the removal of suits ' arising under the Constitution or laws of the United States.' In the language of Chief Justice Marshall, a case ' may truly be said to arise under the Constitution or a law of the United States whenever its correct decision de-pends upon the construction of either.' Cohens v. Virginia, 6 Wheat. 379. Or when ' the title or right set up by the party may be defeated by one construction of the Constitution or law of the United States, or sustained by the opposite con-struction.' *Osborn* v. *Bank of United States,* 9 Wheat. 822.

&ast; &ast; &ast; &ast; &ast;

" In this petition the defendants set forth their owner-ship, by title derived under the laws of the United States, of certain valuable mines, that can only be worked by the hydraulic process, which necessarily requires the use of the

channels of the river and its tributaries in the manner complained of; and they allege that they claim the right to this use under the provisions of certain specified acts of Congress. They also allege that the action arises under, and that its determination will necessarily involve and require the construction of, the laws of the United States specifically enumerated, as well as the preëmption laws.   They state no facts to show the right they claim, or to enable the court to see whether it necessarily depends upon the construction of the statutes. . . .   The statutes referred to contain many provisions; but the particular provision relied on is nowhere indicated.   A cause cannot be removed from a state court simply because, in the course of the litigation, it may become necessary to give a construction to the Constitution or laws of the United States.   The decision of the case must depend upon that construction.   The suit must, in part at least, arise out of a controversy between the parties in regard to the operation and effect of the Constitution or laws upon the facts involved. . . .   Before, therefore, a Circuit Court can be required to retain a cause under this jurisdiction, it must in some form appear upon the record, by a statement of facts, in legal and logical form, such as is required in good pleading, that the suit is one which ' really and substantially involves a dispute or controversy ' as to a right which depends upon the construction or effect of the Constitution, or some law or treaty of the United States."

What is meant by the provision in section 2326, that the question of the right of possession should be determined by a court of competent jurisdiction, was thus spoken of in *Chambers* v. *Harrington,* 111 U. S. 350:

" It is apparent that the statute requires a judicial proceeding in a competent court.   What is a competent court is not specifically stated, but it undoubtedly means a court of general jurisdiction, whether it be a state court or a Federal court; and, as the very essence of the trial is to determine rights by a regular procedure in such court, after the usual methods, which rights are dependent upon the laws of the United States, we see no reason why, if the amount in controversy is

sufficient in a case tried in a court of the United States, or a proper case is made on a writ of error to a state court, the judgment may not be brought to this court for review, as in other similar cases."

This statement is not inconsistent with the cases herein previously cited, as the right to review the judgment of a state court is said to be limited to a proper case having been made, clearly implying that some Federal question should be involved, and that a mere controversy as to the right of possession would not make such a proper case; for otherwise every case arising under section 2326 would be a proper case.

In *Iron Silver Mining Co.* v. *Campbell*, 135 U. S. 286, 299, Mr. Justice Miller in discussing the scope of these sections, said:

"It is true that there are no very distinctive words declaring what kind of adverse claim is required to be set up as a defence against the party making publication; but throughout the whole of these sections and the original statute from which they were transferred to the Revised Statutes, the words 'claim' and 'claimant' are used. This word is, in all legislation of Congress on the subject, used in regard to a claim not yet perfected by a title from the Government by way of a patent. And the purpose of the statute seems to be that where there are two claimants to the same mine, neither of whom has yet acquired the title from the Government, they shall bring their respective claims to the same property, in the manner prescribed in the statute, before some judicial tribunal located in the neighborhood where the property is, and that the result of this judicial investigation shall govern the action of the officers of the land department in determining which of these claimants shall have the patent, the final evidence of title, from the Government."

The ruling in *Bushnell* v. *Crooke Mining Co.*, 148 U. S. 682, is directly applicable to the present case. There a writ of error brought to this court a judgment of the Supreme Court of the State of Colorado. The suit was in ejectment brought by the Crooke Mining Company in a state court against Bushnell, to recover possession of a certain portion of the surface

location of a mining claim on Ute Mountain, and grew out of conflicting and interfering locations of mining claims. The claim of the latter was first located, but when the company applied for a patent Bushnell filed an adverse claim to a portion of the same location, and thereafter, under section 2326 of the Revised Statutes, and within the time prescribed therein, commenced his action in the state court. In the complaint it was alleged that the plaintiff was the owner of the Annie Lode mining claim, and that defendants had, at a certain date, entered upon and ever since wrongfully held possession of a part of said claim, specifically described, and that the action was in support of plaintiff's adverse claim to such portion of the surface location. The question presented on the trial of the controversy arose out of conflicting and interfering locations, and the court gave and refused certain requests to charge the jury, which appear at length in the report of the case in this court. The trial resulted in a verdict and judgment in favor of the plaintiff. An appeal was taken to the Supreme Court of Colorado, which affirmed the judgment of the lower court. The Supreme Court of Colorado rested its judgment upon the general proposition that the trial court had correctly stated to the jury the principal point in controversy, and had left it properly to them to determine, as a matter of fact, what was the course of the conflicting lodes. The case was then brought to this court and was heard on a motion to dismiss the writ or affirm the judgment.

Mr. Justice Jackson, in sustaining the motion to dismiss, said:

"It is plainly manifest that neither the pleadings nor the instructions given and refused present any Federal question, and an examination of the opinion of the Supreme Court affirming the action of the trial court as to instructions given, as well as to its refusal to give the instructions asked by the defendants below, fails to disclose the presence of any Federal question. It does not appear from the record that any right, privilege or immunity under the Constitution or laws of the United States was specially set up or claimed by the defendant

below, or that any such right was denied them, or was even passed upon by the Supreme Court of the State, nor does it appear, from anything disclosed in the record, that the necessary effect in law of the judgment was the denial of any right claimed under the laws of the United States.

"The decision of the Supreme Court of Colorado in no way brought into question the validity or even construction of any Federal statute, and it certainly did not deny to the plaintiffs in error any right arising out of the construction of the Federal statutes. It was said by the Chief Justice, in *Cook County* v. *Calumet & Chicago Canal Co.*, 138 U. S. 635, 653 : 'The validity of a statute is not drawn in question every time rights claimed under such statute are controverted, nor is the validity of an authority every time an act done by such authority is disputed.'"

Accordingly the writ of error to the Supreme Court of Colorado was dismissed.

The legal import of this decision plainly is that a controversy between rival claimants under sections 2325 and 2326 of the Revised Statutes may be properly determined by a state court, and that the judgment of a state Supreme Court, in such a case, cannot be reviewed by this court simply because the parties were claiming rights under the Federal statute.

*Colorado Central Consolidated Mining Co.* v. *Turck*, 150 U. S. 138, was brought to this court on a writ of error to the Circuit Court of Appeals for the Eighth Circuit. An action of ejectment by Turck against the mining company for possession of a certain lode mining claim had been tried in the Circuit Court of the United States for the District of Colorado, and determined in the plaintiff's favor. The case was taken by a writ of error to the United States Circuit Court of Appeals for the Eighth Circuit, and the judgment was there affirmed, and thereupon a writ of error was allowed to this court. The case was here heard on a motion to dismiss on the ground that the suit was between citizens of different States, and that, therefore, under the Judiciary Act of March 3, 1891, the judgment of the Circuit Court of Appeals was final. An attempt was made in argument to sustain the right

of this court to take jurisdiction because, although the suit was between citizens of different States, yet that the solution of the disputed ownership depended upon the construction and application of section 2322 of the Revised Statutes, concerning the dip and apex of lodes, and that hence the suit really and substantially involved a controversy only to be determined by reference to the Federal statute. But this contention did not prevail, and the writ of error was dismissed.

While it is true that the conclusion reached was mainly put upon the ground that the record did not disclose affirmatively that any distinctive Federal question was involved, yet, as the record did disclose a controversy between claimants arising under a Federal mining statute, it is a necessary implication of the decision that that fact alone did not render the case one of which the Circuit Court could take jurisdiction irrespective of citizenship, but that other and apt allegations were required showing that the controversy was determinable by one of two conflicting constructions of the Federal statute, and not one of mere fact in which the validity of the statute was not drawn into question.

A similar principle was involved in *Gillis* v. *Stinchfield*, 159 U. S. 658. That was a suit brought in a state court of California and concerned the ownership of a mining claim. The case was brought to this court, and it was claimed that, as the question in dispute could only be determined by an application of sections 2322 and 2336 of the Revised Statutes of the United States, such a state of facts appearing by the record, there was disclosed a Federal question which, of itself, gave this court jurisdiction to review the judgment of the Supreme Court of the State. But a motion to dismiss the writ of error was allowed. It is true that this court put its judgment on the ground that the judgment of the state Supreme Court was based upon an estoppel, deemed by that court to operate against the plaintiff in error upon general principles of law, irrespective of any Federal question. Still the case is authority for the proposition that controversies in respect to titles derived under the mining laws of the United States may be legitimately determined in the state courts, and that to enable

this court to review the judgment in such a case it must appear not only that the application of a Federal statute was involved, but that the controversy was determined by a construction put upon the statute adverse to the contention of one of the parties.

In *Borgmeyer* v. *Idler*, 159 U. S. 408, it was held that the mere fact that the matter in controversy in an action is a sum of money received by one of the parties as an award under the treaty of the United States with a foreign power, providing for the submission of claims against that power to arbitration, does not in any way draw in question the validity or construction of that treaty, so as to confer jurisdiction on this court to review the judgment of a Circuit Court of the United States. In this case *Gill* v. *Oliver*, 11 How. 529, 545, was cited, in which a writ of error to the Court of Appeals of Maryland was dismissed because, although the matter in dispute was money derived under a treaty with Mexico, yet such a dispute did not involve any question as to the validity or construction of the treaty, Mr. Justice Grier saying: "Both parties claim money in court; and, in order to test the value of their respective assignments they introduce the history of the claim from its origin. The treaty and award are facts in that history. They were before the court, but as facts and not for construction. If A held land under a patent from the United States or a Spanish grant ratified by treaty, and his heirs or assignees dispute as to which have the best title under him, this does not make a case for the jurisdiction of this court under the twenty-fifth section of the judiciary act. If neither the validity nor the construction of the patent or title under the treaty is contested, if both parties claim under it, and the contest arises from some question without or *dehors* the patent or treaty, it is plainly no case for our interference under this section. That the title originated in such a patent or treaty is a fact in the history of the case incidental to it, but the essential controversy between the parties is without and beyond it."

It should not be overlooked that sections 2325 and 2326 form a part of a general scheme in reference to the mineral

lands of the United States. That scheme is contained in chapter six of the Revised Statutes of the United States, and includes sections from 2318 to 2352. Some light is thrown upon the intention of Congress, in the particular we are now considering, by other provisions than those expressed in sections 2325 and 2326.

Thus section 2319 enacts that "all valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, are hereby declared to be free and open to exploration and purchase, by citizens of the United States and those who have declared their intention to become such, under regulations prescribed by law, and according to the local customs or rules of miners in the several mining districts, so far as the same are applicable and not inconsistent with the laws of the United States."

Section 2324 provides that "the miners of each mining district may make regulations not in conflict with the laws of the United States, or with the laws of the State or Territory in which the district is situated, governing the location, manner of recording, amount of work necessary to hold possession of a mining claim," etc.

Section 2332 enacts that where claimants "have held and worked their claims for a period equal to the time prescribed by the statute of limitations for mining claims of the State or Territory where the same may be situated, evidence of such possession and working of the claims for such period shall be sufficient to establish a right to a patent thereto, under this chapter, in the absence of any adverse claim," etc.

Section 2339 provides that "whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same," etc.

Without undertaking to say that no cases can arise under this legislation which turn upon a disputed construction, and therefore presenting a question essentially Federal in its

nature, we hold that clearly where a patent is authorized to be issued to the party in possession, the statutes refer the contest to the ordinary tribunals, which are to determine the rights of the parties without any controversy as to the construction of those acts, but are to be guided by the laws, regulations and customs of the mining district in which the lands are situated. In a case, therefore, like the present, where Federal jurisdiction does not arise because the parties are citizens of different States, and where no question is made as to the meaning and construction of the statutes of the United States, the state courts are to be regarded, within the letter and meaning of section 2326, as courts of " competent jurisdiction to determine the right of possession." The judgment of the Circuit Court is therefore

*Affirmed.*

Mr. Justice McKenna dissented.

Mr. Justice Brown did not sit in this case, and took no part in its decision.