# RICHMOND MINING COMPANY *v.* ROSE & Others.

When the statutes of the United States, and local laws of a mining district authorize a location on a vein of only two hundred feet by each locator, a location by mistake for more than two hundred feet is not thereby made entirely void ; but is good for two hundred feet, and void only for the excess.

A claimant making a claim in good faith, as discoverer of a constituent vein in the Ruby Hill deposit before it was known that the deposit was one lode, is entitled to the additional two hundred feet of location given to discoverers.

The filing of a complaint in a court of competent jurisdiction is a commencement of proceedings by an adverse claimant to determine the right of possession to mineral lands under Rev. Stat. § 2326.

Where defendant in a proceeding under Rev. Stat. § 2326 to determine adverse claims to mineral lands demurs to the complaint, and answers, and goes to trial, it is too late to raise the objection that the complaint was not filed within the time required by the statute.

A decision of a State court upon the question of what constitutes the commencement of an action in that court is not a federal question.

It is not competent for officers of the Land Department, while a proceeding under Rev. Stat. § 2326 is pending in a court of competent jurisdiction, to assume from delay in placing the cause upon the trial calendar, or taking proceedings therein, that the adverse claim has been waived, and to issue a patent for the mineral lands in dispute as if no adverse claim had been made.

A title founded on a patent, procured by an independent application, for a different mineral tract, applied for, and issued pending proceedings under Rev. Stat. § 2326 cannot be set up in those proceedings to affect the result of the litigation in them.

This was a proceeding under Rev. Stat. §§ 2325, 2326, to determine adverse claims to the possession of mineral lands in Nevada. The facts are stated in the opinion of the court. By direction of the court the following explanatory map has been prepared to show the location of the several claims.

*Mr. Thomas Wren* and *Mr. Walter H. Smith* for plaintiff in error.

*Mr. A. B. Browne* and *Mr. C. T. Hillyer* [*Mr. A. T. Britton* and *Mr. J. H. McGowan* were with them on their brief], for defendants in error.

MR. JUSTICE MILLER delivered the opinion of the court.

This is a writ of error to the Supreme Court of Nevada.

The case presents a conflict of mining claims.

The contest began in the State District Court for the County of Eureka, Nevada, by defendants in error filing in that court, as plaintiffs, a petition against the Richmond Mining Company. To save repetition and confusion, the parties will be mentioned in this opinion as they are throughout the record, and as they actually were in the State courts, namely, Rose and others as plaintiffs, and the Richmond Mining Company as defendant.

This petition or complaint was filed October 21, 1873. A demurrer was filed to it by the defendants November 1, and an answer, November 26.

The complaint alleged that plaintiffs were, and ever since January 20, 1872, had been, the owners of the Uncle Sam mining claim, ledge, lode and deposit of mineral-bearing rock in the Eureka Mining District, County of Eureka, and State of Nevada, on the western slope of "Ruby Hill." A minute description of the claim is then given, with courses and distances with reference to the shaft.

It is then alleged that the defendant, unjustly and adversely to plaintiffs, claims an estate in fee in said premises, and has filed in the United States land office an application for a patent thereto, under the name of the St. George Ledge and Mine. Plaintiffs, therefore, pray judgment that defendant be barred from all estate or interest in the premises, or any part thereof, or any right of possession.

The answer of defendant, filed November 26, 1873, denies any claim to plaintiffs' location, except as it is covered by their claim, the St. George, which does cover a small part of it.

As to so much of plaintiffs' claim as is covered by the St. George it asserts a superior right.

The next pleading is an amended answer of the defendant, which sets out the fact, that since the commencement of the suit defendant has acquired title by patent from the United States, to all that portion of the mining ground in controversy, covered by the application for the patent for the St. George claim. This amended answer was filed April 20, 1881, which is seven years and a half after the first or original answer.

In September, 1881, the case was tried before the court without a jury and a judgment was rendered, from which plaintiffs appealed to the Supreme Court. That court modified the judgment of the court below materially in favor of plaintiffs, and to that judgment the Richmond Mining Company, the defendant below, prosecutes this writ of error.

The judge of the District Court of the State made a full finding of the facts in the case on which he rendered judgment, and on those facts the case was heard and decided in the Supreme Court of the State, and so it must be here.

According to this finding, the plaintiffs sunk their shaft on a mineral lode, staked and marked out their claim, gave due notice of it, and did the necessary work on it to perfect their right to the mine. In all this they were prior in point of time to the operations of defendant on their St. George claim. It may, therefore, be assumed that unless some of the objections to the claim of plaintiffs set up by defendant are valid, the judgment of the State Court must stand.

We shall examine these objections in such order as seems convenient.

1. The one much, if not chiefly, relied on is that the claim covers eight hundred lineal feet of the lode; when, there being only three locators, both by the act of Congress and the local laws of that mining district, only two hundred feet could be appropriated to each locator, and, therefore, this excess of two hundred feet over the six hundred, which these three could locate, renders the whole claim void. The law, however, allowed to each locator, who was the discoverer of the vein on which the location was made, two hundred feet additional for his merit as discoverer.

We hardly think it needs discussion to decide that the inclu-

sion of a larger number of lineal feet than two hundred, renders a location, otherwise valid, totally void. This may occur, and often must occur, by accident of the surveyor, or other innocent mistake, where there exists no intention to claim more than the two hundred feet. Must the whole claim be made void by this mistake, which may injure no one, and was without design to violate the law?

We can see no reason, in justice or in the nature of the transaction, why the excess may not be rejected, and the claim be held good for the remainder, unless it interferes with rights previously acquired. It appears by the facts found that one hundred and forty feet of the east end of plaintiffs' location is lost to them by the superior right of the Tip Top claim, leaving only sixty feet of excess; and this, if it were necessary, might be excluded by the government at the other or western end of the claim when it comes to issue the patent; which would leave plaintiffs only the six hundred feet in one body, in regular form. This also would interfere with no prior rights, and would give plaintiffs the benefit of their claim to the extent of two hundred feet for each locator.

But, if it were necessary, we should agree with the Supreme Court of Nevada, that Rose, one of the plaintiffs, was entitled to an additional two hundred feet, as discoverer of the vein on which the claim is located. At the time this location was made there were many claims asserted for veins discovered in Ruby Hill, and most of the claimants believed that they were in each instance the discoverer of a new vein or lode. Rose entertained the same belief when he made his claim and therefore asserted his right to two hundred additional feet along *this* vein as discoverer.

It was supposed some five or six years after this, and after Rose and his companions had spent their money and labor in developing their mine, that the whole Ruby Hill deposit was one zone or lode of great width, and it has been held in the *Eureka case*, 4 Sawyer, 302, that, though there were many small, detached fissures or veins, distinct from each other, composing this zone, it is within the meaning of the act of Congress concerning locations to be treated as one lode or vein.

But Rose, or his vendor, Phillips, was the discoverer of this vein within the lode, and as such asserted in good faith his right to an additional two hundred feet.

We do not see any reason, within the spirit of the law, where the claim as discoverer injures no one at the time it is made, and it has been made in good faith, in the reliance on the actual discovery of one of these constituent veins, and acted on for five years before knowledge of any mistake, it should not justify the claim for the two hundred feet as discoverer.

2. The next objection to be noticed is that the court should have held that the patent obtained by defendant from the United States, which covered all that defendant claimed, should prevail, as it conveyed the legal title.

This proposition goes to the merits of the case, and, if sound, covers the field of controversy. Its soundness depends on the statutes of the United States, and mainly on §§ 6 and 7 of the act of Congress of May 10, 1872, 17 Stat. 92, 93, which are embodied in the Revised Statutes in §§ 2325 and 2326.

By the first of these sections the applicant for a patent for a mining claim is required to file with his application the evidence of his right to it, and the register is to cause a publication of the application to be made for sixty days, during which time any adverse claimant to any part of the location described in this application is required to give notice of contest by filing a protest in the land office.

As no question is raised in this case that defendant filed his claim properly, and plaintiffs made due protest within the sixty days, and as the controversy arises out of the subsequent proceedings under the next section, that is copied here in full:

"Where an adverse claim is filed during the period of publication, it shall be upon oath of the person or persons making the same, and shall show the nature, boundaries, and extent of such adverse claim, and all proceedings, except the publication of notice and making and filing of the affidavit thereof, shall be-stayed until the controversy shall have been settled or decided by a court of competent jurisdiction, or the adverse claim waived. It shall be the duty of the adverse claimant, within thirty days after filing his claim, to commence proceedings in

a court of competent jurisdiction, to determine the question of the right of possession, and prosecute the same with reasonable diligence to final judgment; and a failure so to do shall be a waiver of his adverse claim. After such judgment shall have been rendered, the party entitled to the possession of the claim, or any portion thereof, may, without giving further notice, file a certified copy of the judgment-roll with the register of the land office, together with the certificate of the Surveyor-General that the requisite amount of labor has been expended or improvements made thereon, and the description required in other cases, and shall pay to the receiver five dollars per acre for his claim, together with the proper fees, whereupon the whole proceedings and the judgment-roll shall be certified by the register to the Commissioner of the General Land Office, and a patent shall issue thereon for the claim, or such portion thereof as the applicant shall appear, from the decision of the court, to rightly possess. If it appears from the decision of the court that several parties are entitled to separate and different portions of the claim, each party may pay for his portion of the claim, with the proper fees, and file the certificate and description by the Surveyor-General, whereupon the register shall certify the proceedings and judgment-roll to the Commissioner of the General Land Office, as in the preceding case, and patents shall issue to the several parties according to their respective rights. Nothing herein contained shall be construed to prevent the alienation of the title conveyed by a patent for a mining claim to any person whatever."

Under this provision plaintiffs filed with the register, on the 24th of September, 1873, their protest, to which no objection is perceived. On October 21 their complaint was filed in the proper court in Nevada in support of their protest. But they did not pay any docket fee, nor any other fee, and no fees were paid by them until August, 1874.

It is argued that, by reason of the failure to pay these fees within the time required by the statute of Nevada, the court acquired no jurisdiction of the case until after the thirty days within which, by the foregoing section, the action was to be commenced; and, also, that, because no process to appear was

issued or served on the defendants within thirty days, the whole proceeding is void.

There are several sufficient answers to these suggestions.

1. We do not doubt that within the meaning of the act of Congress the plaintiffs did *commence proceedings* by filing their complaint on the 21st of October, eight days inside the thirty days which it allowed.

2. Defendants having demurred within a few days after this commencement of the suit, and answered, and gone to trial without raising this objection in the proper time, cannot be permitted to do it now.

3. What constitutes the commencement of an action in a State court being matter of State law, the decision of that court on this point is not a federal question, and is not therefore re-viewable here.

These propositions also answer the objection of non-payment of fees to the State, which is purely a matter of State concern, and if it could in any manner avail the defendant it must have been by motion at the time, and before demurring or answering to the merits.

It may also be added, that, as the clerk paid the fees into the county treasury in due time, it became simply a matter of debtor and creditor between him and plaintiffs.

A question of more difficulty arises out of the facts, that, after the answer of defendant in 1873, the cause was put on the calendar for trial, but no trial was had for several terms by reason of negotiations for a settlement of the controversy ; and the last order for continuance was had in March term, 1874, on motion of counsel for defendant. In September, 1876, the defendant produced before the register and receiver of the land office, the certificate of the clerk of the court to the effect that this action had not been placed upon the trial calendar, nor any proceedings been had thereon from the March term, 1874, to the date of the certificate.

The section already cited, regulating the proceedings in this class of cases, enacts that, after the protest shall have been duly filed in the land office, "all proceedings, except the publication of notice, and making and filing of the affidavit thereof,

shall be stayed until the controversy shall have been settled or decided by a court of competent jurisdiction, or the adverse claim waived." The land officer to whom the defendant presented this certificate of the clerk, holding it to be sufficient evidence that "the adverse claim had been waived," proceeded to prepare the necessary papers on which the Commissioner issued the patent, whose effect is now under consideration.

It must be admitted that, if the land officer had the right, while this action was pending in the courts, never dismissed, and yet undecided, to determine that plaintiffs' claim, adverse to defendants, had been waived, and to resume action in the case on that decision, the court was in error in holding the patent void as to the interfering claims. For, though the court of first jurisdiction finds facts sufficient to show that this delay was not the fault of plaintiffs, and in no way implied a waiver of their claim, these facts can only be shown probably in some proceeding directly to impeach the patent, or set it aside. At all events, if the Land Department had any right to decide that there was a waiver while the action was still pending and undecided, the presumption that it decided rightly must be conclusive in an action at law, and if this action is of that character it must be conclusive here. Whether this patent can be thus impeached under the course of proceedings in the Nebraska courts, we need not inquire here, for we are of opinion that the land officers had no such power.

Looking at the scheme which this statute presents, and which relates solely to securing patents for mining claims, it is apparent that the law intended, in every instance where there was a possibility that one of these claims conflicted with another, to give opportunity to have the conflict decided by a judicial tribunal before the rights of the parties were foreclosed or embarrassed by the issue of a patent to either claimant. The wisdom of this is apparent when we consider its effect upon the value of the patent, which is thereby rendered conclusive as to all rights which could have been asserted in this proceeding, and that it enabled this to be done in the form of an action in a court of the vicinage, where the witnesses could be produced, and a jury, largely of miners, could pass upon the

rights of the parties under instruction as to the law from the court.

It is in full accord with this purpose that the law should declare, as it does, that when this contest is inaugurated the land officers shall proceed no further until the court has decided, and that they shall then be governed by that decision; to which end a copy of the record is to be filed in their office. They have no further act of judgment to exercise. If the court decides for one party or the other the Land Department is bound by the decision. If it decides that neither party has established a right to the mine or any part of it, this is equally binding as the case then stands. With all this these officers have no right to interfere. After the decision they are governed by it. Before the decision, once the proceeding is initiated, their function is suspended.

What, then, is meant by the phrase, " all proceeding shall be stayed until the controversy is settled or decided by a court, of competent jurisdiction, or the adverse claim waived?"

We can imagine several ways in which it can be shown that the adverse claim is waived without invading the jurisdiction of the court while the case is still pending. One of these would be the production of an instrument signed by the contestant, and duly authenticated, that he had sold his interest to the other party, or had abandoned his claim and his contest. Or, since the act says that all proceedings shall be stayed in the land office from the *filing of the adverse claim*, and not from the commencement of the action in the court, within thirty days, such delay of thirty days is made by the statute conclusive of a waiver. A filing in the records of the court by the plaintiff of a plea that he abandons his case or waives his claim, might authorize the land office to proceed.

But all these are very far removed from the assumption by that officer that, because there have been delays in the court, plaintiff has waived his claim. It is for the court, while it has jurisdiction of the case, that is, until it is decided or dismissed, to pass upon the rights of the parties—to decide whether either party has lost his right by laches or failure to proceed with diligence, and to act accordingly. If defendant in this case was

dissatisfied with the delay, he had all the remedies usual in courts in such cases. A motion to dismiss for want of prosecution would have relieved him if he was entitled to treat the case as abandoned. Or he could, in all the ordinary ways, require the plaintiff to go to trial or show good cause for continuance.

But, while all this was in the hands of the court, with full power to do what was necessary to establish judicially the rights of the parties, the land office could not resume control of the case upon the idea which might be there entertained of an implied waiver of the claim from delay in the court.

It had no power over the case, and its action and its patent, so far as it affects the rights of plaintiffs, are void. The rejection of the patent as influencing the judgment of the court was not therefore an error.

3. Another error is assigned growing out of the fact, that the defendant, during the time this litigation was pending, located another claim called the Victoria on this lode, outside of and parallel with the St. George. Without notice to plaintiffs, and with no opposition, they procured a patent for this claim, and set it up against plaintiffs on the trial of this action.

It is insisted that, though this claim does not come on the surface in conflict with the Uncle Sam location, it is in the same vein, and gives the right to pursue that vein under the Uncle Sam claim, and, being a patent about which there was no contest, it must prevail in this action.

But without deciding the question of their right to pursue the vein under ground as against a prior valid location, by reason of the earlier date of patent, we concur with the Supreme Court that the right to that part of this very vein being in contest between these parties in reference to the Uncle Sam and St. George claims, the decision of this controversy cannot be rendered nugatory by the introduction of a new claim by one of the parties, whose claim of right from the government for this same location is initiated while this litigation is going on. The parties were all in court. The subject matter was before the court. The thing to be decided was the right of the conflicting claims to this lode. This was within the jurisdiction

of the court, and any patent issued to one, or the other, or both these parties, under this proceeding for this property, must relate back to the date of their claims, and override the new patent. This result cannot be defeated by producing this new patent to destroy it. The claim was initiated by a party to this suit *pendente lite*, and must abide the result of the litigation in this case.

These are the principles which control the decision of the case. There may be others suggested by counsel which are not here specially noticed, but they are not deemed sufficient to vary the result.

*The judgment of the Supreme Court of Nevada is affirmed.*

Submitted January 8, 1885.—Decided May 4, 1885.