Decided 15 July, 1901.

## STEPHENS *v.* WOOD.

[65 Pac. 602.]

RESCISSION OF CONTRACT—RETURNING CONSIDERATION.

1. Before a rescission of a partly performed contract can be demanded, and a
reconveyance be had of property that has been transferred in pursuance of such
contract, the moving party must return, or offer to return, whatever has been
received of the agreed consideration.

VENDOR AND PURCHASER—ENFORCEMENT OF CONTRACT.

2. Part of the purchase price for land and mining claims sold by plaintiffs to
defendants was paid, and it was agreed that a portion of the balance was to be
paid to a trustee to whom plaintiffs deeded the property, who should therewith
clear up outstanding claims and procure patents from the government. When
the trustee had done this, the remainder of the purchase money was to be paid
to plaintiffs. The trustee cleared up all claims, and applied for and obtained
patents for all except fifteen acres, which were omitted from his application be-
cause it was believed that the claim thereto, though made in good faith, was
void, in that it did not conform to the government subdivisions. The law on
this point is apparently unsettled. *Held*, that it was the duty of the trustee to
endeavor to secure the patent for the fifteen acres, and that, the plaintiffs not
being at fault in the failure to obtain such patent, were entitled to a decree that
the trustee turn over to them the balance of the purchase price which he had on
hand.

From Baker : ROBERT EAKIN, Judge.

This is a suit by E. A. Stephens and J. S. Brice against Frederick Wood and others for equitable relief. The facts are that on July 6, 1896, the plaintiffs entered into a written contract with the defendant Wood whereby they agreed to sell and convey to him about two hundred and sixty acres of unpatented mining land and other property for which they had contracts of purchase, together with certain water rights, for the sum of $50,000. The deeds for the property were to be placed in the possession of the Farmers' and Traders' Bank of La Grande, to be held by it as an escrow until September 1, 1896, and then delivered to Wood or his assigns upon the payment to the plaintiffs of $25,000 in cash, and the execution and delivery to them of a mortgage on the premises to secure the payment of a promissory note for the balance on or before September 1, 1897. Subsequently, and before the first payment became due, the contract was modified by reducing the purchase price to $40,000, extending the time of the final payment to December 1, 1897, and inserting a guaranty on the part of the plaintiffs that the ground would yield at least ten cents per cubic yard. The first payment was thereupon made, the deeds delivered to the bank as agreed, and Wood entered into possession of the property, which he and his assigns have ever since retained. The mortgage to secure the deferred payment not having been executed, the deeds in escrow were not delivered. Before the second payment became due, some question arose in relation to the performance of the contract, its proper construction, and the title to the property. On June 18, 1897, by agreement, the plaintiffs and their attorney met the attorney in fact of the defendant Wood, and C. A. Johns, his legal adviser, for the purpose of adjusting their differences. After consider-

able preliminary negotiation, it was finally agreed, as a
basis of settlement, that the balance of the purchase price
should be reduced from $20,000 to $13,500, and, in order
to clear up the title, that the property should be conveyed
to Johns, as trustee, who should purchase and acquire,
upon terms satisfactory to the plaintiffs, acquittances and
conveyances from certain adverse claimants with the
$11,500 which Wood agreed to advance to him as a part
of the amount remaining due the plaintiffs on the pur-
chase price of the property, and should also "proceed at
once to take the necessary steps to apply for a patent to
all the mining property described" in the deed to him
and in the contract of July 6, 1896, between the plaintiffs
and Wood, "and prosecute the said application with dili-
gence;" Wood or his assigns to "advance on demand all
moneys or expenses that may be necessary or required to
further and promote such patent proceedings." It was
further agreed and stipulated that the balance of the
$13,500, over and above the advancement by Wood to
Johns for the purpose of acquiring outstanding titles and
water rights, should not be due and payable to the plain-
tiffs "until such time as a final receipt shall be obtained
from the United States land office to the placer mining
ground described in said deed, and until the said out-
standing titles shall be conveyed to the trustee; and
when such final receipt is obtained, and such conveyances
are made, then and in that event the balance of the $13,500
shall become due and payable."

The property was accordingly conveyed by the plaintiffs
to Johns, and Wood advanced $11,819.25, which was used
in purchasing outstanding titles and water rights, under
the direction and with the approval of the plaintiffs.
Johns also applied, according to a description prepared
by a deputy United States mineral surveyor, for a patent
to the mining land, Wood paying the expenses thereof.

The surveyor, however, on his own motion, omitted from the description fifteen acres of the land described in the contract of sale between plaintiffs and Wood, because he thought a location by the plaintiff Brice of one twenty-acre tract, known in the record as the "unnamed claim," was invalid on account of a failure to conform to legal subdivisions. This omission was not discovered by or known to the trustee or any of the parties until after the publication of notice of the application. As soon as the error became known, the plaintiffs and Wood's representative immediately insisted that the trustee should apply for a patent to the omitted tract ; but no such application was made, because neither party would do the work necessary to patent it apart from the entire tract. After the outstanding title had been acquired by the trustee, and the certificate for a patent received by him for all the lands except the fifteen acres, the plaintiffs demanded payment of $1,680.75, the balance due on the purchase price. Wood refused to make such payment, but deposited the amount with defendant Johns to abide the settlement of the dispute between him and the plaintiffs. This suit was thereupon commenced to compel the trustee to reconvey the property to the plaintiffs, or for such other relief as might seem just and equitable. The court below held that the patenting of the land was a condition upon which the final payment was to become due, and that the trustee's failure to obtain a patent for the fifteen-acre tract was not the fault of Wood or his assigns, and entered a decree dismissing the complaint, from which the plain-tiffs appeal.                                   REVERSED.

For appellants there was a brief over the name of *J. D. Slater*, with an oral argument by *Messrs. J. D.* and *W. T. Slater*.

For respondents there was a brief and an oral argument by *Mr. John L. Rand.*

MR. CHIEF JUSTICE BEAN, after stating the facts, delivered the opinion of the court.

1.   It is apparent that plaintiffs are not entitled to the full relief demanded in their complaint.   Before they could rescind the contract and compel a reconveyance of the property, they must return, or offer to return, the money received by them on the contract.

2.   The only question in the case, then, is whether the plaintiffs are entitled to the balance of the purchase price now in the hands of the trustee.   The contract of July, 1897, provides that such payment shall not become due until a certificate for a patent to the mining land shall be received by the trustee.   As no such certificate has been received by him for the fifteen-acre tract, it is clear that plaintiffs can not recover unless the failure to obtain it was due to the fault or negligence of the defandants. The argument in support of the decree of the court below is that the fifteen-acre tract was not located as a mining claim according to law, and therefore the failure of the trustee to include it in his application for a patent worked no hurt or injury to the plaintiffs.   If this position is sound, the decree should be affirmed.   If, however, the validity of the location is open to serious controversy, the question was for the determination of the United States land department, and not for Wood or the trustee. The agreement was that the trustee, the attorney and legal adviser of Wood, should immediately apply for a patent to all the mining ground, and should diligently prosecute such application, Wood or his assigns to advance all moneys or expenses necessary or required therefor, and was, in effect, the same as if the property had

been conveyed directly to Wood, under an agreement that he should, at his own cost and expense, immediately apply for a patent to the land. Unless, therefore, it was clearly apparent that an application would be futile because of the invalidity of the location, it was the duty of the trustee and Wood to proceed under the contract, and their failure to do so affords no excuse for the non-payment of the balance due on the contract of purchase. Now, in the notice of location of the "unnamed claim," it is described as follows : "Beginning at a point three hundred feet west and one thousand three hundred and twenty feet south of quarter corner between sections 32 and 33, township 10 south, range 46 east, Willamette Meridian, and runs two thousand six hundred and forty feet north ; thence three hundred and sixty feet west ; thence two thousand six hundred and forty feet south ; thence three hundred and sixty feet east to place of beginning, containing twenty acres."

The statute of the United States provides that legal subdivisions of forty acres may be subdivided into ten-acre tracts (Rev. Stat. U. S. § 2330), and that placer claims on surveyed lands must conform as near as practicable to the legal subdivisions. By such legal subdivisions, the description in the notice of location of the "unnamed claim" would cover the west half of the east half of the southeast quarter of the northeast quarter, and the west half of the east half of the northeast quarter of the southeast quarter of section 32, and also a strip thirty feet wide, extending north and south along the east side of these two subdivisions ; in other words, the location as made conforms in all the exterior lines to the legal subdivisions, except the east boundary includes thirty feet of the adjoining subdivisions. The error evidently occurred through making the beginning point three hundred instead of three hundred and thirty feet

west of the east line of section 32.   There is nothing in
the pleadings or evidence to indicate that the location of
the mining claim was not made by Brice in perfect good
faith, and there is authority for the contention that it is
not void because more land is covered thereby than he
was entitled to take : *Richmond Min. Co.* v. *Rose*, 114
U. S. 576 (5 Sup. Ct. 1055); *Thompson* v. *Spray*, 72 Cal.
528 (14 Pac. 182); *Jupiter Min. Co.* v. *Bodie Consol. Min.
Co.* (C. C.) 11 Fed. 666 ; *Stem-Winder Min. Co.* v. *Emma
& L. C. Consol. Min. Co.* (Idaho) 21 Pac. 1040 ; *Hansen*
v. *Fletcher*, 10 Utah, 266 (37 Pac. 480).   But we deem it
unnecessary to pass upon that question.   It is sufficient
that the location was not clearly void.   Under the con-
tract, it was the trustee's duty to apply immediately for
a patent to the land, and, at Wood's expense, to prose-
cute such application with reasonable diligence ; and
that the result would have been doubtful is no excuse for
a failure to undertake it.   It is to be remembered in this
connection that plaintiffs did not agree to sell patented
claims, nor was the obtaining of the patent a condition
precedent to the final payment.   Of course, their con-
tract must be understood as stipulating that they were
the owners of the property, and entitled to sell and con-
vey the same, but there was no agreement that they
should obtain patents therefor.   The application for the
patent was to be made by the attorney for Wood, at the
latter's expense and for his benefit ; and the provision
in reference to the matter in the contract of June 19, 1897,
was intended to fix the time of the final payment.   If
the trustee, according to the terms of the contract, had
applied for a patent to the fifteen-acre tract, and it had
been denied, defendants would, no doubt, have been enti-
tled to redress on account of the failure of title to a part
of the land purchased by them.   But the defense in this
suit is not based on a failure of title, but upon the theory

that, because the plaintiffs did not amend their location notice so as to make the "unnamed claim" conform to the legal subdivisions, the patent could not be obtained, and therefore the balance of the purchase price is not due.   The answer further pleads a breach of the stipulation in the contract of purchase and sale that the ground would yield ten cents minimum per cubic yard.   The plaintiffs allege that this provision of the contract was waived at the time of the settlement in June, 1897.   But, however that may be, no evidence was offered or given on the trial showing a breach of the contract, or from which the court could determine the damages, if any, sustained by the defendants on account thereof.   We conclude, therefore, that plaintiffs are entitled to a decree requiring the defendant Johns, as trustee, to pay over to them the balance on the purchase price of the property, and against the defendants Wood and the Flick Bar Placer Mining Company for their costs and disbursements.

REVERSED.

Decided 15 July, 1901.