PRICE et al. v. McINTOSH et al.

(Second Division. Nome. November 16, 1901.)

No. 242.

1. MINES AND MINERALS—LOCATION NOTICE—MONUMENTS—STAKES.

A placer claim is not void because there is a discrepancy between the courses and distances mentioned and called for in the location notice and the stakes and monuments set by the locator to mark the boundaries of his claim. Where there is such a conflict, the stakes and monuments must prevail, if they are sufficient to identify the claim, as they are in the case at bar.

2. SAME—PUBLIC LANDS—SURVEYS.

A mining claim located on surveyed lands "shall conform as nearly as practicable with the United States system of public-land surveys, and the rectangular system of such surveys" (Act May 10, 1872, c. 152, 17 Stat. 91). On unsurveyed lands they may be located, surveyed, platted, and patented without regard to the public surveys, and need not conform thereto in any particular.

3. SAME—LIMITATIONS UPON LOCATION.

The only limitation placed by law upon a placer mining claim located upon the unsurveyed public domain in Alaska is that it shall not exceed 20 acres in area.

4. SAME—LIMITATIONS UPON AREA—MINERS' RULES.

A miners' rule, custom, or regulation arbitrarily fixing the size of all placer claims at 1,320 feet long by 660 feet wide is

void. A miners' rule, custom, or regulation cannot limit a placer mining claim to less than 20 acres; nor fix its unvarying form upon the unsurveyed public domain; and such a rule, custom, or regulation is void.

5. MINING LOCATION—EXCESS AREA—RELOCATION.

As between two locators, and as affecting their rights only, one cannot locate ground of which the other is in actual possession under claim or color of right, because such ground would not be vacant and unappropriated. Where a junior locator attempts to relocate the excess in area in a placer claim, he must locate some portion of the excessive claim not actually occupied by the diggings or property of the senior locator.

This is a suit in ejectment to recover possession of a portion of a mining claim which is known to all parties to this action, and will be hereafter referred to as the "California Fraction." Plaintiffs allege two sources of title. The first is derived through a placer mining location made on May 29, 1899, by one Thorolf Kjelsberg; and the second through a placer mining location upon the same ground made on August 18, 1900, by Magnus Kjelsberg. The defendants claim title through a location of the California fraction by one E. G. Gould, made on August 22, 1900. By stipulation in open court, a jury trial was waived, and the cause submitted to the decision of the court upon the merits.

It is not denied that each of the Kjelsbergs made his location at the dates claimed. It is admitted that their southeast and southwest corner stakes are identical in place with those of the California fraction, and it is admitted that the California fraction was located, and intended to be located, within the Kjelsbergs' claims, with the intent to locate and claim the excess in width therein over 660 feet. The following diagram shows the respective locations of the parties,

and gives, at least approximately, the admitted corners and distances of their claims:

Diagram showing respective locations of Thorolf and Magnus Kjelsberg's Claims, also California & Lennon Fractions.

Chas. S. Johnson, P. C. Sullivan, A. J. Daly, Ira D. Orton, and Alfred Fink, for plaintiffs.

Thompson, Murane & Thompson, for defendants.

WICKERSHAM, District Judge (after stating the facts as above). Under the admitted facts in this case these questions arise for determination by the court: (1) Was Thorolf Kjelsberg's placer location void because his notice of location called for a tract 1,320 feet long by 660 feet wide, while the stakes and monuments actually set by him at the corners of his claim inclosed a space described in the foregoing map 1,061 feet on the south line, 787 feet on the west line, 904 feet on the north line, and 777.7 feet on the east line? (2)

Was it void as to the excess in width over 660 feet? (3)
Was the junior location made by Magnus Kjelsberg valid or
void for conflict with the senior location made by his broth-
er? (4) Was the location of the Gould or California fraction,
which is conceded to be within the exterior boundaries of
both the prior Kjelsberg locations, valid or void, in view of
the actual possession of the ground by the prior locators with
their diggings at the time of its location?

The mining laws of the United States were extended to
Alaska by section 8 of "An act providing a civil government
for Alaska," approved May 17, 1884, c. 53, 23 Stat. 24.

The first inquiry arising in this cause must be decided in
the negative. The court has had occasion to examine into
that question in the case of Steen v. The Wild Goose Mining
Co., ante, 255, and held that a placer location would not be
void for a discrepancy between the courses and distances
mentioned in the notice and the stakes and monuments set
by the locator to mark the boundaries of his claim; that,
where there is such a conflict, the stakes and monuments
must prevail, if they are sufficient to identify the claim, as
they are in the case at bar. Section 682, Code Civ. Proc. p.
286; Carter's Alaska Code (Act June 6, 1900, c. 786, 31 Stat.
440) Bennett v. Harkrader, 158 U. S. 441, 15 Sup. Ct. 863, 39
L. Ed. 1046; Book v. Justice Min. Co. (C. C.) 58 Fed. 106;
1 Lindley on Mines, §§ 381, 382. The adoption of any other
rule would wholly defeat even the claims of the defendants in
this action, for the notice of their location of the California
fraction begins at their southeast corner stake, and carries
their claim 1,320 feet south, whereas their stakes and monu-
ments locate it 1,061 feet west from that point. Miners in
the mountains, without surveying instruments, or even a
compass, to guide them, or any present method of making
accurate measurements, are not expected to get their courses
or distances accurately. The court will pay more attention

1 A.R.—19

to their stakes and monuments. The purpose of both the no-
tice and the monuments is to "identify the claim," and gen-
erally this can be done most certainly by the stakes set on
the ground by the miner himself. Certainly, they must gov-
ern when there is a difference between them and the calls
in the notice. The Kjelsberg claim is not void for that rea-
son.

The second objection made to the Thorolf Kjelsberg lo-
cation, which is really the point in this case, too, is much
more serious, and seems never to have been clearly passed
upon by the courts. Conceding this claim to be of the di-
mensions shown upon the diagram, is it void as to the
excess in width over 660 feet, or may it be sustained, though
wider than 660 feet, because as actually located and marked
upon the ground it does not contain more than 20 acres of
land?

It may save time to suggest at the beginning that a differ-
ent rule is fixed by statute for determining the shape and area
of lode and placer claims. Section 2320, Rev. St., being sec-
tion 2 of the act of 1872 (Act May 10, 1872, c. 152, 17 Stat. 91
[U. S. Comp. St. 1901, p. 1424]), provides that a lode claim lo-
cated after the 10th day of May, 1872, "may equal, but shall
not exceed, one thousand five hundred feet in length along
the vein or lode. * * * No claim shall extend more than
three hundred feet on each side of the middle of the vein at
the surface, nor shall any claim be limited by any mining
regulation to less than twenty-five feet on each side of the
middle of the vein at the surface. * * * The end-lines of
each claim shall be parallel to each other."

· Here is a specific statutory limitation upon the maximum
length of a lode claim, and a specific limitation upon both
the maximum and minimum width, with a specific direction
that the end lines shall be parallel to each other. And yet
in the Eureka Case in the United States Circuit Court of

Nevada, decided by Judge Field, and concurred in by Judge Sawyer, it is said that "the provision of the statute of 1872, requiring the lines of each claim to be parallel to each other, is merely directory, and no consequence is attached to a deviation from its direction." Eureka M. Co. v. Richmond M. Co., 4 Sawy. 302, Fed. Cas. No. 4,548, 9 Morr. Min. Rep. 578. Nor is it necessary that the side lines of a lode claim should be parallel, or that the location should be in the form of a parallelogram. A lode claim may be in any form bounded by lines, not exceeding the maximum length and width, which enables the miner to follow the vein of ore. A horseshoe shape has passed the Supreme Court of the United States without criticism, a wedge shape has been sustained by the Supreme Court of California, and a triangle by the United States Circuit Court in Montana. Iron Silver Co. v. Elgin Co., 118 U. S. 196, 6 Sup. Ct. 1177, 30 L. Ed. 98; Doe v. Sanger (Cal.) 23 Pac. 365; Montana v. Clark (C. C.) 42 Fed. 626.

Attention is called to the fact that the lode law was first enacted by Congress in 1866 (Act July 4, 1866, c. 166, 14 Stat. 85) while the first placer law was not passed until 1870 (Act July 9, 1870, c. 235, 16 Stat. 217). They are different acts, and largely independent of each other. The provisions necessary to a determination of this case are entirely separate and distinct from the lode law, and the decisions applicable to lode claims may or not apply to placer claims. None of the provisions fixing the size and extent of lode claims apply to placer claims.

The courts have frequently decided that the location of more ground than is allowed by law is void only as to the excess, and that to that extent the location is void. Richmond M. Co. v. Rose, 114 U. S. 576, 5 Sup. Ct. 1055, 29 L. Ed. 273; Jupiter M. Co. v. Bodie M. Co. (C. C.) 11 Fed. 666; Stemwinder M. Co. v. Emma M. Co. (Idaho) 21 Pac. 1040,

affirmed on appeal to Supreme Court of the United States, 13 Sup. Ct. 1052, 37 L. Ed. 960; Rose v. Richmond M. Co. (Nev.) 27 Pac. 1105. All the authorities cited by the defendant to sustain this point are those relating to lode, and not to placer, claims. The leading case of Richmond v. Rose, 114 U. S. 576, 5 Sup. Ct. 1055, 29 L. Ed. 273, was decided upon the early lode act of 1866, while the others above cited are either in construction of that or later lode acts. They are, then, in point only so far as principles are to be considered. Still the general principle may be considered as settled by these and other decisions that a mining location, whether lode or placer, containing more ground than allowed by the statute, must be held void as to the excess. To the extent allowed by law it will be sustained.

Is there an excess in area in this case? Can there be an excess in a placer mining claim, however wide or long it may be, unless the area exceeds 20 acres? To answer these questions involves a brief examination of the United States mining laws, and the conditions which preceded their enactment by Congress. The necessary information upon these matters, however, is authoritatively stated in the decision of the Supreme Court of the United States and in the statutes themselves.

From the discovery of gold in California to the passage of the act providing for a District and Circuit Court for the District of Nevada, approved February 27, 1865 (13 Stat. 440, c. 64), there was no national legislation upon the subject of the western gold-bearing mineral lands. The act of February 27, 1865, only recognized the right of litigants to maintain suits for the possession of such lands, without regard to the paramount ownership of the United States. From the beginning of mining in California, however, local rules and regulations adopted by the miners in district meetings had been recognized as the common law of the diggings.

In Jennison v. Kirk, 98 U. S. 453, 25 L. Ed. 240, Judge Field continues this historical review:

"These regulations and customs were appealed to in controversies in the state courts, and received their sanction; and properties to the value of many millions rested upon them. For eighteen years —from 1848 to 1866—the regulations and customs of miners, as enforced and molded by the courts and sanctioned by the legislation of the state, constituted the law governing property in mines and in water on the public mineral lands."

The act of Congress of July 26, 1866 (14 Stat. 251, c. 262), known as the "Lode and Water Law," was the first of the great mining statutes. It gave no recognition, however, to placer deposits, but was confined exclusively to lode and quartz mines. As the real wealth of California had, up to that time, been extracted from her placer deposits, it was not long before Congress passed the act of July 9, 1870. Section 12 of this act first fixed a statutory limit upon the quantity of land which might be embraced in a placer claim in the following language: "That no location of a placer claim, hereafter made, shall exceed one hundred and sixty acres for any one person or association of persons, which location shall conform to the United States surveys." 16 Stat. 217, c. 235. See section 2330, Rev. St. U. S. 1878 [U. S. Comp. St. 1901, p. 1432]. Again we quote from Judge Field, in Smelting Co. v. Kemp:

"Previously to the act of July 9, 1870, 16 Stat. 217, Congress imposed no limitation to the area which might be included in the location of a placer claim. This, as well as every other thing relating to the acquisition and continued possession of a mining claim, was determined by rules and regulations established by miners themselves. * * * Placer claims first became the subject of regulation by the mining act of July 9, 1870, which provided that patents for them might be issued under like circumstances and conditions as for vein or lode claims, and that persons having contiguous claims of any size might make joint entry thereof. But it also provided

that no location of a placer claim thereafter made should exceed one hundred and sixty acres for one person or association of persons." Smelting Co. v. Kemp, 104 U. S. 636, 650, 26 L. Ed. 875.

Prior, then, to 1870, there was no limit to the area of placer mines, nor any provision fixing their form, except such as was imposed by the miners by their local rules and regulations. The act of 1870 limited the area to 160 acres in each location, and also provided that each "location shall conform to the United States surveys." This latter provision is important in the consideration of the question at bar, for it provided a new and unyielding rule in fixing both the area and form of placer claims. They could not exceed 160 acres in extent, as theretofore they might, and must conform to the rectangular system of the public surveys. The law of 1870, however, was so unsatisfactory, and so widely at variance with the methods theretofore prevailing in locating placers, that Congress was speedily prevailed upon to change the law in these respects.

The act of May 10, 1872, was then passed, very largely to relieve the objections raised to the act of 1870 in requiring each placer location to "conform to the United States surveys." The act of 1872 re-enacted the old rule. It again gave freedom to the miner in locating his mine according as the ground was valuable for mineral or not. To be more accurate, it recognized two rules, which will be more apparent upon quoting the law. Section 10 of the act of May 10, 1872 (17 Stat. 94, c. 152), is now section 2331 of the Revised Statutes of the United States of 1878 [U. S. Comp. St. 1901, p. 1432], and that clause in question reads:

"Sec. 2331. Where placer-claims are upon surveyed lands, and conform to legal subdivisions, no further survey or plat shall be required, and all placer-mining claims located after the tenth day of May, eighteen hundred and seventy-two, shall conform as near as practicable with the United States system of public-land surveys, and

the rectangular subdivisions of such surveys, and no such location, shall include more than twenty acres for each individual claimant; but where placer-claims cannot be conformed to legal subdivisions, survey and plat shall be made as on unsurveyed lands."

Two rules are thus recognized in locating and fixing the exterior boundaries of placer claims under the act of 1872. The first one provides that all claims located after May 10, 1872, "shall conform as near as practicable with the United States system of public land surveys, and the rectangular system of such surveys." The second—and the one always in force until the act of 1870 was passed—and now given legislative recognition, is in this language: "But where placer claims cannot be conformed to legal subdivisions, survey and plat shall be made as on unsurveyed lands." These two rules for determining the form and extent of placers, together with the provision reducing the area to 20 acres in each location, continue to be the law to this day, and must determine the controversy at bar.

The court will take judicial notice that the "public land surveys and the rectangular subdivisions of such surveys" have not been extended to this part of Alaska, and do not embrace the claim in question, but that all the public domain within this division of the court is unsurveyed. It follows that all placer claims within this division may be located, surveyed, platted, and patented without regard to the public surveys, and need not conform thereto in any particular. When the surveys are extended over this region, such claims will be noted upon the map of such surveys as lots in the usual manner.

The only limitation, then, imposed by statute upon the location of a placer mining claim upon the unsurveyed public land in Alaska is that it shall not include an area of more than 20 acres. It need not conform to the public surveys. No limit is fixed by statute to its length, breadth, or form.

Section 2320, Rev. St., fixing the maximum length and width of lode claims, does not apply; and unless some rule, regulation, or custom of miners within the district limits the locator, it seems as if he may locate his placer claim to follow the pay streak, in any form he chooses, but not to exceed 20 acres in extent.

Counsel for defendant seem to have recognized this, for they pleaded and offered proof to support both a rule and a custom of that kind. The rule proved was adopted by the miners in the Cape Nome mining district on October 15, 1898, and is in the following language: "2nd. A motion by Eric O. Lindbloom, and seconded by John Bryndeson, that placer claims shall be located 1320 (thirteen hundred and twenty) feet by 660 (six hundred and sixty) feet. Carried." They also proved by the deputy recorder of the district that nearly 15,000 mining locations had been filed in his office, and that more than 95 per cent. thereof described the claim as 1,320 by 660 feet square.

Conceding both the rule and custom to have been established, what effect shall be given to them? Literally, they both say that placer claims shall be 1,320x660 feet square; no more, no less. It cannot be pretended that a maximum width alone is established by either, nor is it attempted to be shown that any forfeiture clause or custom is in force in such cases. Neither the rule nor the custom makes any concessions to fractions, such as all parties in this cause claim, and a literal adherence to the rule will render each claim in this case void. To enforce either the rule or custom literally would require a miner who desired to locate one acre of placer deposit fraudulently to include nineteen acres of agricultural or nonmineral land in his location. Under such a condition no prospector would be safe to locate a mine, except when accompanied by a surveyor, or having with him some means of accurately measuring the ground. It

cannot be seriously argued that either a rule or a custom of that kind would be reasonable, or ought to be upheld by the courts. If neither the rule nor the custom can be maintained literally, then what effect shall be given to them? Counsel for defendant answers: This effect—that no claim shall be longer than 1,320 feet nor wider than 660 feet. Two objections appear to this answer. The first is that neither the rule nor custom is to that effect; and, second, the court ought not to infer a construction which does not fairly exist for the purpose of forfeiting the prior claim of another. Jupiter M. Co. v. Bodie M. Co. (C. C.) 11 Fed. 666.

Why not determine the construction to be given to both the rule and custom by the construction given to a similar rule in the lode law of 1872? Neither the rule nor the custom relied on by defendant does more than to fix an ideal maximum containing 20 acres. The statutory provisions relating to the length and width of lode claims in section 2320, Rev. St. U. S., do identically that, yet in the celebrated Eureka opinion, written by Judge Field, and concurred in by Judge Sawyer, the United States Circuit Court of Nevada declared: "In the second place, the provision of the statute of 1872, requiring the lines of each claim to be parallel to each other, is merely directory, and no consequence is attached to a deviation from its direction." By a parity of reasoning it seems fair to conclude that the rule and custom in question are each only directory, and not mandatory, and no consequence can be attached to a deviation from either of them. Eureka M. Co. v. Richmond M. Co., 4 Sawy. 302, Fed. Cas. No. 4,548, 9 Morr. Min. Rep. 578.

More important questions, however, are involved: Can a placer mining location be limited by a miners' rule, regulation, or custom either, first, to an area less than 20 acres, or, second, in form, upon the unsurveyed public land?

While the construction given to the mining laws by the

Department of the Interior may not be binding upon the court, a contemporaneous and long accepted construction by that department is entitled to great consideration. And especially is this true when it appears that for many years the titles through all placer patents have vested under that construction, which has not once been questioned by the courts.

The sixty-first rule or regulation promulgated by that department under its authority to dispose of the mining lands of the United States concludes with this sentence: "And no local laws or mining regulations can restrict a placer location to less than twenty acres, although the locator is not compelled to take so much." Regulations of 1891, approved by Secretary Noble, reissued 1894, approved by Secretary Hoke Smith; 2 Lindley on Mines, p. 1200; Barringer and Adams, pp. 259, 260.

Without seeking for decisions for support, it must be conceded that every miner has the statutory right to locate 20 acres for placer deposits, nor is he required or permitted thus to acquire title to agricultural or nonmineral land. If, then, he be obliged by miners' rule or regulation to take a tract in no case longer than 1,320 feet nor wider than 660 feet, he may be even limited to one acre. Suppose the mining ground is in a narrow valley only 100 feet wide, such a construction would allow him only a strip 100 feet wide by 1,320 feet long, or 3 acres, whereas the law allows him 20. These questions have repeatedly been determined by the Land Office and the Interior Department.

Application was made to this department to enter the Bear river extension placer claim in sections 12, 13, and 14, Tp. 15 N., R. 9 E., California, along the bed of Bear river 12,000 feet. Upon appeal to Secretary Teller, he said:

"It was the intention of the mining laws, generally, to permit persons to take a certain quantity of land fit for mining, and not to compel them to take such a quantity irrespective of its fitness for mining.

The act of July 9, 1871, which expressly required placer locations to conform to the lines of the public surveys, was unreasonable, a hardship, and in contravention of the established customs of the mining region. Therefore it was modified by the act of May 10, 1872, so as to provide for exceptional cases where reason and common sense required a different regulation. Such an exceptional case, in my judgment, is now before me, where the entire placer deposit in a cañon within certain limits is claimed, and where the adjoining land on either side is totally unfit for mining or agriculture." In re William Rablin, 2 Land Dec. Dept. Int. 764.

Secretary Teller's decision was approved in later decisions by that department (In re Pearsall and Freeman, 6 Land Dec. Dept. Int. 227; Esperance Mining Claim, 10 Copp's Land Owner, 338), and in approving it Lindley says:

"There can be no question but that this ruling is in harmony with the customs of miners in California. * * * Evidently, there was some reason for the modification of the original placer act in this respect, and there can be no doubt that Secretary Teller states the 'old law, the mischief, and the remedy' correctly." 1 Lindley on Mines, p. 448.

At the end of this section Lindley lays down what is undoubtedly the correct rule in this forceful language:

"Locations upon unsurveyed lands may be made in any form, so long as the statutory area is not exceeded."

Barringer and Adams reach the same conclusion, and say:

"A placer location may be in any shape, but should conform to legal subdivisions when the land has been surveyed." Page 260.

A single case only upholds a different rule. The Idaho court in the case of Rosenthal v. Ives says:

"Was it error to find the existence of a mining custom at the date of the Ives location, limiting all placer claims in that locality to eighty rods in length, and will this finding support the conclusions of law based thereon? Rules and customs of miners, reasonable in themselves, and not in conflict with any higher law, have long been

recognized and sanctioned by legislative enactments and judicial decisions. That such rules may still be adopted and enforced as a part of the law of this country is too well settled to admit of argument. We cannot see that the custom in question in any way conflicts either with the acts of Congress or the laws of the territory, but, on the contrary, think the custom a reasonable one, and entirely in harmony with the spirit of the laws." Rosenthal v. Ives (Idaho) 12 Pac. 904, 15 Morr. Min. R. 324.

Nor does the Idaho court cite a single authority to support its contention in this respect. Its conclusion is in direct opposition to the construction given for many years by the Land Department, and approved by every other authority having occasion to pass upon it. To gain that advantage to the miner, Congress passed the amendment of 1872, at the same time reducing the area from 160 to 20 acres, and the advantage ought not to be surrendered by construction. It is a fair inference, too, from the language used in Rosenthal v. Ives (1) that in the opinion of that court a rule or custom of miners was necessary to limit the length of placer claims to 80 rods, or 1,320 feet; and (2) that without such a rule or custom it might be of any length or width, providing only that the claim did not exceed 20 acres in area. In the case at bar the court finds that the rule and customs pleaded do not have that effect, and Rosenthal v. Ives is, by reason of that difference, an authority against the defendant.

Until corrected by a superior tribunal, or convinced that it is in error, this court will maintain that a miner may locate 20 acres, or less, if he desires, of placer mining ground in any form he chooses, excluding known nonmineral land; that no miners' rule, regulation, or custom can limit him in the area or form of his claim, nor in its width or length; that any such rule, regulation, or custom is void for conflict with both the spirit and letter of the placer mining law.

It follows, in my judgment, that the location of Thorolf

Kjelsberg was not void in any part, for, as staked and located, it did not contain more than 20 acres. The evidence does not convince the court that he and Grenier, his partner, ever abandoned that part, at least, in the Good Luck location, for they were so far recognized as its owners that they sold it and received the consideration therefor.

The last query in this case—whether or not the location of the California fraction upon ground actually and notori-ously then in possession of an adverse claimant is valid or void—is fully answered by the language of the Supreme Court of Utah as follows:

"It is conceded by the respondents, and it is doubtless true, that, as: between two locators, and as affecting their rights only, one cannot locate ground of which the other is in actual possession under claim or color of right, because such ground would not be vacant and unoccupied. This would affect the appellant's right to recover for the conflict area in dispute, it being an undisputed fact that at the very time when the Virginia was located by him, the respondents, the locators of the Nabob, were in actual possession, sinking their incline shaft, and occupying a shanty on the ground." Eilers v. Boatman, 3: Utah, 159, 2 Pac. 66, 15 Morr. Min. R. 462.

Upon appeal to the Supreme Court of the United States, this case was distinctly affirmed, because it was "right on the facts." Eilers v. Boatman, 111 U. S. 356, 4 Sup. Ct. 432, 28 L. Ed. 454. Under the principle thus approved by the Supreme Court of the United States, a junior location of an excess over the maximum allowed by law ought not to be sustained, unless it is taken from that part of the claim not actually occupied by the diggings or property of the senior locator.

The location of the California fraction was and is void, because there was no excess or fraction upon which to locate. It was void for the further reason that at the time of its attempted location the strip or fraction was in the actual oc-

cupation of Thorolf Kjelsberg and his partner, and was then actually being worked and mined. Findings and decision will be in favor of the plaintiffs.